(No. 48109.—

UNDERGROUND CONTRACTORS ASSOCIATION, Appellee, v. THE CITY OF CHICAGO, Appellant.

*Opinion filed April 5, 1977.*

372

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Edmund Hatfield, Assistant Corporation Counsel, and Steven G. Revethis (law student), of counsel), for appellant.

O'Brien, Carey, McNamara & Scheuneman, Ltd., of Chicago (Donald V. O'Brien, and LaDonna Chuchro (law student), of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

This is an appeal from a summary judgment order entered against the city of Chicago, invalidating certain procedures used for bidding on and awarding contracts. The circuit court of Cook County ruled the procedures violated the statutory requirement that public works contracts be awarded to the lowest responsible bidder. (Ill. Rev. Stat. 1973, ch. 24, par. 8–10–3.) The city was granted a direct appeal to this court.

Underground Contractors Association, Inc., a not-for-profit trade association of underground construction companies located in the Chicago area, brought this action for declaratory relief. In its complaint, Underground sought to have declared invalid, as violative of the statutory requirements governing the awarding of public works contracts, a plan devised and used by the city's purchasing agent to encourage the hiring of minorities by firms which bid on public works projects. This plan, which is referred to as the "Canvassing Formula," allows the city's purchasing agent to reduce a bid by a limited amount determined by the

percentage of total labor hours minority workmen will be employed on the project. It then permits the purchasing agent to determine the successful bidder on the basis of that reduced amount, but to award the contract at the originally bid price. Thus, the recipient of the contract need not actually be the lowest responsible bidder as purportedly required by statute and as implemented by the city's ordinance.

The city filed a motion to dismiss challenging Underground's standing to maintain the action. In its memorandum in support of its motion to dismiss, the city argued no actual or justiciable controversy existed between it and Underground because the association was not in the construction business, did not compete for public works contracts, and did not allege injury or a threat of injury to itself. Underground replied to the city's argument by pointing to Illinois decisions wherein an association was a party to a declaratory action, and argued that under the expanded theory of standing recognized in the Federal courts, associations have standing to sue as representatives of their members who are injured or threatened with injury by government action. The court denied the city's motion to dismiss and ordered it to file an answer.

The city filed its answer, and again denied Underground's standing to proceed in a representative capacity. Underground then filed a motion for summary judgment supported by a memorandum of law. Finding no genuine, disputed issue of fact but only a question of law, the court entered an order of summary judgment in favor of Underground. The court ruled the "Canvassing Formula" was invalid as it purportedly gave the city and its purchasing agent the power and discretion to award a contract to a responsible bidder who was not necessarily the "actual" lowest responsible bidder as required by section 8—10—3 of the Municipal purchasing act for cities of 500,000 or more population (Ill. Rev. Stat. 1973, ch. 24, par. 8—10—3), and by chapter 26—1 of the Municipal

Code of the city of Chicago. It is from this order that the city appeals.

Again, the city challenges Underground's standing to maintain this action for declaratory relief. It argues that inasmuch as plaintiff is not an underground construction contractor, does not compete for public works contracts, and has not alleged any injury or threat of injury to itself, the association does not have an interest in the controversy and is not, therefore, a proper party to challenge the city's authority by way of a declaratory judgment action. We agree.

Essentially, there are two main, general requirements for standing to bring an action for declaratory relief. First, there must be an "actual controversy." (Ill. Rev. Stat. 1973, ch. 110, par. 57.1(1).) "Actual" in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. (*Exchange National Bank of Chicago v. County of Cook* (1955), 6 Ill. 2d 419, 421-22; *Spalding v. City of Granite City* (1953), 415 Ill. 274, 283; *Saline Branch Drainage District v. Urbana-Champaign Sanitary District* (1948), 399 Ill. 189, 192-93. As applied, see *Gibraltar Insurance Co. v. Varkalis* (1970), 46 Ill. 2d 481, 484-86; *Slack v. City of Salem* (1964), 31 Ill. 2d 174, 177-78.) The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. *A. S. & W. Club of Waukegan v. Drobnick* (1962), 26 Ill. 2d 521, 524; *Saline Branch Drainage District v. Urbana-Champaign Sanitary District* (1948), 399 Ill. 189, 195-96.

The second, and somewhat related requirement, is that the party seeking the declaration must be "interested

in the controversy." (Ill. Rev. Stat. 1973, ch. 110, par. 57.1(1).) The word, "interested" does not mean merely having a curiosity about or a concern for the outcome of the controversy. Rather, the party seeking relief must possess a personal claim, status, or right which is capable of being affected. (*E.g., Clark Oil & Refining Corp. v. City of Evanston* (1961), 23 Ill. 2d 48, 51-2; *Retail Liquor Dealers Protective Association v. Fleck* (1951), 408 Ill. 219, 227-28; *Dean Milk Co. v. City of Aurora* (1949), 404 Ill. 331, 334.) The dispute must, therefore, touch the legal relations of parties who stand in a position adverse to one another. *Exchange National Bank of Chicago v. County of Cook* (1955), 6 Ill. 2d 419, 422.

Underground argues that, as the representative of its members, it need not have a direct interest in the controversy in order to maintain an action for declaratory relief so long as it can show that one or more of its members would have had standing had they individually brought the action. To illustrate this contention, Underground has brought to our attention several Illinois decisions wherein an association was a party to an action for declaratory relief. (*Electrical Contractors Association v. Illinois Building Authority* (1966), 33 Ill. 2d 587; *Illinois News Broadcasters Association v. City of Springfield* (1974), 22 Ill. App. 3d 226; *Antioch Community High Teachers' Association v. Board of Education* (1971), 2 Ill. App. 3d 504; *Fox Lake Hills Property Owners Association v. Fox Lake Hills, Inc.* (1970), 120 Ill. App. 2d 139.) We note, however, that in none of these decisions was the question of standing raised. Those decisions, therefore, are not authority for the position urged by the plaintiff. In fact, in two of the decisions cited, interests peculiar to the associations themselves were involved. In *Antioch,* for example, the association as well as its members had an interest in the controversy, for the association's right and ability to negotiate with the board of education concerning paid personal leaves was directly

involved. *Fox Lake* involved the interpretation of a restrictive covenant and a subdivider's authority to release certain homeowners from an obligation to pay dues to the plaintiff association.

In *Lake County Contractors Association v. Pollution Control Board* (1973), 54 Ill. 2d 16, 21, a case cited by the defendants, this court expressly reserved ruling on the question of the association's standing to maintain the action as it was not necessary to the disposition of that case.

Illinois decisions which have discussed an association's standing to maintain, on behalf of its members, an action for declaratory relief clearly indicate that an association's representational capacity alone is not enough to give it standing, absent a showing that it has a recognizable interest in the dispute, peculiar to itself and capable of being affected. This was most aptly noted in *Retail Liquor Dealers Protective Association v. Fleck* (1951), 341 Ill. App. 283, 289-90. In that case, two associations representing member retail liquor dealers, together with certain individuals, brought a declaratory judgment action against the members of the Illinois Liquor Control Commission challenging the Commission's authority to deny State liquor licenses to dealers who had been issued local liquor licenses. The defendant denied the associations' standing to maintain the action as representatives of their members. The appellate court held that inasmuch as the associations were not engaged in the retail liquor business, were not seeking State licenses, and had no other direct interest in the action, they were not proper parties to seek declaratory relief. On appeal, this court affirmed the appellate court's ruling, relying on the reasoning of *Retail Liquor Dealers Protective Association v. Schreiber* (1943), 382 Ill. 454, a *mandamus* action, and held that an association could not maintain an action for declaratory relief where it was not shown to have had a direct interest in the action. (*Retail Liquor Dealers Protective Association v. Fleck*

(1951), 408 Ill. 219, 227-28.) Applying *Fleck* to the facts in the instant case, we note that, as the city alleges, Underground is not engaged in the construction business, does not compete for public works contracts, and has not alleged any injury or threat of injury to itself. It, therefore, does not have standing to maintain this action.

Underground urges, however, that we adopt and apply the Federal court's position which allows an association standing, in limited situations, to maintain suits solely for the benefit of its members. Despite Underground's urging, we need not address ourselves, at this time, to the merits underlying the Federal rule, for, as evidenced by the United States Supreme Court's most recent pronouncement in *Warth v. Seldin* (1975), 422 U.S. 490, 45 L. Ed. 2d 343, 95 S. Ct. 2197, Underground's complaint is insufficient to give it standing even under the Federal rule.

In *Warth,* certain individuals and organizations brought suit against the town of Penfield, New York, and members of Penfield's zoning, planning, and town boards. The plaintiffs claimed that Penfield's zoning ordinance, by its terms and as enforced, effectively excluded persons of low and moderate income from living in the town in contravention of plaintiff's rights guaranteed by the United States Constitution and certain Federal statutes. Relief sought included a declaration that the ordinance was unconstitutional, an injunction against further enforcement, and a prayer for $750,000 in actual and exemplary damages. Rochester Home Builders Association, Inc., an association of construction contractors in the Rochester, New York, area, sought leave to intervene as a party plaintiff. In its petition, Home Builders alleged that the Penfield zoning restrictions, together with refusals by the town officials to grant variances and permits for construction of low- and moderate-cost housing, had deprived some of its members of business opportunities and profits. Home Builders claimed damages to its members of $750,000 and joined in the original plaintiffs'

prayer for declaratory and injunctive relief. The district court denied Home Builders' petition to intervene, and this was affirmed on appeal.

On *certiorari* in the United States Supreme Court, the court addressed itself specifically to the issue of the association's standing to maintain the suit solely as the representative of its members. The court observed:

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members. *E.g., National Motor Freight Assn. v. United States,* 372 U.S. 246 (1963). The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy. See *Sierra Club v. Morton,* 405 U.S. 727 (1972). The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. *Id.,* at 734-741. So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction." *Warth v. Seldin* (1975), 422 U.S. 490, 511, 45 L. Ed. 2d 343, 362, 95 S. Ct. 2197, 2211-12.

Applying these requirements to the facts before it, the court denied Home Builders standing to seek monetary relief for its members, as any injury suffered by individual members would require individual proof, and therefore each member who claimed monetary injury would have to be made a party to the suit. As to Home Builders' standing to seek prospective relief for its members, the court held

that Home Builders did not have standing because the complaint failed to allege facts sufficient to make a case or controversy had the members themselves brought the action. The court noted that Home Builders' complaint referred to no specific project of any of its members that was precluded either by the ordinance or by the city's action in enforcing it. There was no averment that any member had applied to the city for a building permit or a variance with respect to any current project; neither was there an indication that the city had delayed or thwarted any project proposed by Home Builders' members. The court, therefore, concluded that the association failed to show the existence of any injury to its members of sufficient immediacy and ripeness to warrant judicial intervention. *Warth v. Seldin* (1975), 422 U.S. 490, 516, 45 L. Ed. 2d 343, 365, 95 S. Ct. 2197, 2214.

Underground's complaint evidences many of the same deficiencies that the court found in *Warth*. Underground's complaint does not contain an averment that any of its members have lost a contract award because of the city's enforcement of its "Canvassing Formula." There is no allegation that a project has been currently placed for bids on which Underground's members wish to bid. The averment of paragraph 8(a) of the complaint, wherein Underground states that, upon information and belief, the city, through the use of its formula, has recently awarded an underground construction contract to one who was not the lowest responsible bidder, is merely a conclusion. The averment does not allege that as a result of the use of the "Canvassing Formula" an Underground member failed to receive the contract award, nor does it even allege that any of the Underground's members placed bids on the proposed project. We must conclude, therefore, that even under Federal standing requirements for associational organizations, Underground's complaint fails to allege facts showing injury or the threat of injury sufficient to allow it to maintain this action.

Accordingly, the judgment of the circuit court of Cook County is reversed, and the cause is remanded with directions to dismiss the complaint.

*Reversed and remanded,*
*with directions.*