No. 2--96--0843

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________

CABLE TELEVISION AND COMMUNICA-      )  Appeal from the Circuit Court

TIONS ASSOCIATION OF ILLINOIS,       )  of Du Page County.

                                     )

          Plaintiff-Appellant,       )  No. 96--CH--236

                                     )

     v.                              )

                                     )

AMERITECH CORPORATION; AMERI-        )

TECH NEW MEDIA ENTERPRISES,          )

INC., n/k/a Ameritech New            )

Media, Inc.; and THE VILLAGE OF      )

GLENDALE HEIGHTS,                    )  Honorable 

                                     )  John W. Darrah,

          Defendants-Appellees.      )  Judge, Presiding.

_________________________________________________________________

     JUSTICE DOYLE delivered the opinion of the court:

     Plaintiff, Cable Television and Communications Association of

Illinois (the Association), appeals from the dismissal of its

complaint against defendants, Ameritech Corporation (Ameritech),

Ameritech New Media Enterprises, Inc. (n/k/a Ameritech New Media,

Inc.) (Ameritech New Media), and the Village of Glendale Heights

(the Village).  Ameritech New Media and the Village jointly

motioned to dismiss the complaint pursuant to section 2--619 of the

Code of Civil Procedure (Code) (735 ILCS 5/2--619 (West 1994)). 

The circuit court of Du Page County entered an order granting the

motion to dismiss the complaint based on the court's determination

that the Association lacked standing to bring its complaint.

     On appeal, the Association contends that the trial court erred

in dismissing the complaint because it had standing to bring the

complaint (1) under Illinois law; (2) under Federal law; and (3)

based on its past representation of its members in various legal

proceedings in Illinois.

     The Association is an Illinois not-for-profit corporation

whose members are cable television companies that hold franchises

to provide cable television service in Illinois.  Time Warner

Entertainment--Advance/Newhouse Partnership (Time Warner) is a

member of the Association.

     Prior to August 17, 1995, Time Warner held the sole franchise

to provide cable television service in the Village.  On August 17,

1995, the Village enacted an ordinance granting Ameritech New Media

a nonexclusive franchise to provide cable television service in the

Village also.  Time Warner is not a party to this case and has not

sought to intervene.

     On October 23, 1995, the Association filed a complaint in the

circuit court of Cook County.  The case was subsequently

transferred to Du Page County.  The complaint claimed that the

cable television franchise which the Village granted to Ameritech

New Media violated certain federal and state statutes.   The

complaint sought declaratory and injunctive relief including a

permanent injunction prohibiting Ameritech New Media from providing

cable television services in the Village.

     In response to the complaint, Ameritech New Media and the

Village jointly motioned to dismiss the complaint pursuant to

section 2--619 of the Code (735 ILCS 5/2--619 (West 1994)).  The

motion to dismiss asserted that the Association lacked standing to

bring this action.  Defendants argued that the Association lacked

standing because (1) the Association had not alleged in its

complaint and could not properly allege that it had suffered any

direct injury from the agreement between Ameritech New Media and

the Village; and (2) the Association's representative capacity, by

itself, did not give it standing.

     The Association responded to the motion to dismiss by filing

the affidavit of its president, Gary J. Maher.  Maher's affidavit

stated, inter alia, that the Association has acted as the legal

representative of its members on a number of occasions and has

acted as a party on behalf of its members in a variety of legal

proceedings.  The affidavit also stated that the Association's sole

source of revenue is membership fees of 4 cents per month per

subscriber paid by its members, so that if a member loses

subscribers the result would be a decline in the Association's

revenues.

     The trial court conducted a hearing on the matter.  The court

noted that the underlying issue was a relatively narrow question

regarding the competitive positions, within the framework of

applicable federal and state statutes, of Time Warner and Ameritech

New Media as providers of cable television services in the Village. 

The court determined that the Association, notwithstanding its

claimed loss of revenues from a decline in Time Warner's

subscribers, did not have a direct interest in the underlying issue

and therefore did not have standing.

     The standing doctrine requires that a party, either in an

individual or representative capacity, have a real interest in the

action brought and in its outcome.  In re Estate of Wellman, 174

Ill. 2d 335, 344 (1996).  The purpose of the standing doctrine is

to make sure that only parties with a sufficient stake in the

outcome of the controversy raise the issues before the court. 

Harris Trust & Savings Bank v. Duggan, 95 Ill. 2d 516, 527 (1983). 

     Under Illinois law, an association's representative capacity,

by itself, is not enough to give it standing to maintain an action

for declaratory relief on behalf of its members.  Underground

Contractors Ass'n v. City of Chicago, 66 Ill. 2d 371, 377 (1977). 

Rather, an association must also have a recognizable interest in

the dispute peculiar to itself and capable of being affected. 

Underground Contractors Ass'n, 66 Ill. 2d at 377. 

     With few exceptions, Illinois courts have consistently held

that an association does not have standing to bring an action on

behalf of its members unless it has been or will be directly

injured and therefore has a personal claim related to its own

property, or that it has suffered or will suffer injury to a

substantive legally protected interest in its individual capacity. 

See, e.g., Underground Contractors Ass'n v. City of Chicago, 66

Ill. 2d 371 (1977) (no standing where association was not in the

construction business and did not bid for public works contracts in

its individual capacity); Westwood Forum, Inc. v. City of

Springfield, 261 Ill. App. 3d 911 (1994) (no standing where

associations did not own any property and were not in the business

of owning or selling property); Indian Hill Neighbors' Ass'n, Inc.

v. American Cablesystems, 171 Ill. App. 3d 789 (1988) (no standing

where association had no property rights in area to be developed by

cable television franchisee); Forsberg v. City of Chicago, 151 Ill.

App. 3d 354 (1986) (no standing where associations were not subject

to the boat-mooring tax in question, did not own boat moorings, and

did not pay boat-mooring fees).

     In this case, the Association first contends on appeal that it

has standing under Illinois law because it satisfies the direct

injury requirement.  The Association bases its contention on its

probable loss of revenues as a result of the provision of cable

television services to the Village's residents by Ameritech New

Media.  The Association asserts that it will likely suffer a loss

of revenues because the provision of cable television services to

the Village's residents by Ameritech New Media will reduce the

number of Time Warner's subscribers.  The Association maintains

that this will result in a proportionate reduction in the

membership fees Time Warner pays to it.  The Association argues

that such a loss of revenues would constitute a real injury to a

legally cognizable interest in its individual capacity sufficient

to confer standing on it to bring this action.

     We disagree.  The loss of revenues that the Association claims 

it will suffer is not a direct injury.  Rather, the projected loss

of revenues is merely an indirect result of a claimed reduction in

the number of Time Warner's subscribers.  The Association itself is

not in the business of providing cable television services and

therefore does not have any subscribers whose numbers could be

reduced by competition from Ameritech New Media.  The Association's

linkage of its revenues to the number of its members' subscribers

does not change the indirect nature of its claimed injury.  Thus,

under Illinois law, the Association does not have standing to bring

this action.

     Alternatively, the Association contends that it has standing

under the federal associational standing doctrine set forth by the

United States Supreme Court in Warth v. Seldin, 422 U.S. 490, 45 L.

Ed. 2d 343, 95 S. Ct. 2197 (1975), and Hunt v. Washington State

Apple Advertising Comm'n, 432 U.S. 333, 53 L. Ed. 2d 383, 97 S. Ct.

2434 (1977).  In Warth and Hunt the court held that an association

has standing to bring a suit in its representative capacity in

certain situations even if the association has not suffered a

direct injury.  

     The Association acknowledges that Illinois courts are not

bound to follow the federal associational standing doctrine, but

urges us to adopt it on the ground that the rationale of the Warth

and Hunt decisions is compelling.  In support of its position, the

Association asserts that (1) the Illinois Supreme Court has never

explicitly rejected the federal association standing doctrine; (2)

the appellate court's rejection of the federal doctrine in Forsberg

v. City of Chicago, 151 Ill. App. 3d 354 (1986), was misplaced

because a review of our supreme court's decisions indicates that

the court would be receptive to adopting the federal standard; and

(3) numerous other states have chosen to follow the federal

doctrine.

     The Association argues that it satisfies the federal

requirements for associational standing.  In the Association's

view, if we adopt the Federal doctrine, we must conclude that the

Association has standing to bring this action.

     We decline to adopt the federal associational standing

doctrine.  It is well established that Illinois courts are not

required to follow federal law on issues of standing.  Greer v.

Illinois Housing Development Authority, 122 Ill. 2d 462, 491

(1988).  Moreover, the Association has not cited any Illinois case

that has followed the federal doctrine.  In Underground Contractors

Ass'n, where our supreme court determined that it was not required

to address the merits of the federal doctrine, the court noted: 

          "Illinois decisions which have discussed an

       association's standing to maintain, on behalf of its

       members, an action for declaratory relief clearly indicate

       that an association's representational capacity alone is not

       enough to give it standing, absent a showing that it has a

       recognizable interest in the dispute, peculiar to itself and

       capable of being affected."  Underground Contractors Ass'n,

       66 Ill. 2d at 377.

       Subsequently, Illinois courts have continued to use the direct-

injury requirement to determine whether an association has

standing.  See, e.g., Illinois Gamefowl Breeders Ass'n v. Block, 75

Ill. 2d 443 (1979); Westwood Forum, Inc. v. City of Springfield,

261 Ill. App. 3d 911 (1994).

     Perhaps most important, in Forsberg v. City of Chicago, 151

Ill. App. 3d 354 (1986), the appellate court specifically declined

to follow the federal doctrine.  The Association has not persuaded

us to reject Forsberg.  We agree with Forsberg, and the cases cited

therein, that an association's representative capacity alone is not

enough to give it standing in an action for declaratory and

injunctive relief.

     For these reasons, we decline to follow the federal

associational standing doctrine.  Accordingly, we need not

determine whether the Association has satisfied the requirements

for standing under the federal doctrine.

     The Association's final contention that it has standing to

bring this action is based on its assertion that in the past it has 

advanced the interests of its members in a variety of legal

proceedings throughout Illinois.  In support of this contention,

the Association cites three Illinois cases: Illinois-Indiana Cable

Television Ass'n v. Illinois Commerce Comm'n, 55 Ill. 2d 205

(1973), Central Illinois Public Service Co. v. Illinois Commerce

Comm'n, 268 Ill. App. 3d 471 (1994), and People ex rel. O'Malley v.

Illinois Commerce Comm'n, 239 Ill. App. 3d 368 (1993).  The

Association argues that these cases show that it has been

recognized and accepted as an appropriate party in litigation

involving the interests of its members and the cases therefore

support its claim of standing in this case.

     The cited cases do not support the Association's claim that it

has standing.  The cited cases are all distinguishable from this

case because the cited cases involve appeals from the Illinois

Commerce Commission (the Commission) proceedings under the Public

Utilities Act (Act) (220 ILCS 5/1--101 et seq. (West 1994)).  The

Act provides that "any person or corporation" may bring a complaint

before the Commission and that "[n]o complaint shall be dismissed

because of the absence of direct damage to the complainant."  220

ILCS 5/10--108 (West 1994).  Thus, under the Act, an association,

in a representative capacity, may properly bring a complaint before

the Commission or pursue an appeal from a decision by the

Commission.  Illinois Telephone Ass'n v. Illinois Commerce Comm'n,

67 Ill. 2d 15, 24-25 (1977).  However, this does not conflict with

our holding that representational capacity alone is not enough to

give an association standing to bring a declaratory judgment

action.  Illinois Telephone Ass'n, 67 Ill. 2d at 25-26.

     It follows that the Association's representation of its

members in appeals from decisions by the Commission, as in the

cited cases, has no bearing on whether the Association has standing

to bring this action.  Therefore, the Association's argument that

it has standing in this case because of its history of

representation of its members in the cited cases fails.

     Based on the foregoing, we conclude that the circuit court did

not err when it dismissed the Association's complaint on the ground

that the Association does not have standing to bring this action. 

Accordingly, the judgment of the circuit court of Du Page County is

affirmed.

     Affirmed.

     GEIGER, P.J., and THOMAS, J., concur.